EDOK Criminal Complaint (Revised 6/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL COMPLAINT** |
| *Plaintiff,* | |
| v. | **Case No.**  26-MJ-86-GLJ |
| **DAVID CLAYTON SPEARS,** | |
| *Defendant.* | |

I, Jamie M. Cavitt, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about September 4, 2025, in the Eastern District of Oklahoma, David Clayton Spears, committed the crime of Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

(See attached Affidavit in Support of Criminal Complaint, which is attached hereto and made a part hereof by reference.)

☒       Continued on the attached sheet.

_____
Jamie M. Cavitt
Special Agent
Federal Bureau of Investigation

Sworn to on April __3__, 2026.

 GERALD L. JACKSON_____
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jamie M. Cavitt, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and as such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 841. I am currently employed with the Federal Bureau of Investigation and have been so employed since August of 2012.

2. I am presently assigned to the Criminal Squad of the FBI Oklahoma City Field Office where I investigate and have investigated violations of Federal criminal law. I was previously a commissioned Police Officer for over 8 years at the Wichita Police Department in Wichita, Kansas. During these assignments, I investigated violations of state and federal law to include, but not limited to, violent crimes (bank robbery, aggravated assaults, etc.), crimes on Indian land, public corruption, firearms violations, gang violence, conspiracy, narcotics trafficking, fraud against the government, and computer intrusion. I have gained experience and knowledge through training and everyday work, related to conducting these types of investigations.

3. As a result of my training and experience as a FBI Special Agent and a police officer, I am familiar with Federal criminal laws. I know it is unlawful for a person to distribute or knowingly and intentionally possess with the intent to distribute methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, §§ 841 (a)(1) and 841(b)(1)(A).

4. The statements contained in this affidavit are based, in part, on information and reports provided to me by the Oklahoma Department of Corrections (ODOC) Office of Inspector

General (OIG) and Choctaw Nation Lighthorse Police regarding the investigation of smuggling narcotics and other contraband into the Oklahoma State Penitentiary (OSP). The statements in this affidavit are further based upon reports provided to me from examinations and the execution of search warrants; and my experience, training, and background as an FBI Special Agent. In addition, unless otherwise indicated, all statements contained in this affidavit are summaries in substance and in part. Since this affidavit is being submitted for the limited purpose of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only facts which I believe are necessary to assist in the issuance of a Complaint and to establish probable cause to believe a violation of Title 21, United States Code, §§ 841 (a)(1) and 841(b)(1)(A) was committed by David Clayton SPEARS.

## **PROBABLE CAUSE**

5.    On September 4, 2025, a denim bag containing contraband was located inside the laundry facility at the Oklahoma State Penitentiary (OSP), which is in McAlester, Oklahoma and within the Eastern District of Oklahoma. Agents with the Oklahoma Department of Corrections (ODOC), Office of the Inspector General (OIG), Criminal Interdiction Division conducted an investigation and found that OSP employee Lieutenant Correctional Officer David Clayton Spears (SPEARS) conspired with OSP inmates to smuggle narcotics and other contraband into OSP.

6.    The contraband located in the laundry room included:

   a)  2.2 ounces of a green leafy substance believed to be marijuana

   b)  60 grams (gross) of a white crystal-like substance (field tested positive for methamphetamine)

   c)  5 THC wax containers

   d)  27 vape cartridges

e) 4 vape pens

f) 1 Roku stick and 1 Roku remote

g) 5 tattoo needles

h) 9 charging cables, 1 vape charger, 1 pair of corded headphones, and 2 charging blocks

i) 4 touchscreen cellular devices

7. The methamphetamine found in the laundry room was analyzed by the Drug Enforcement Administration. The Chemical Analysis Report identified the substance as methamphetamine hydrochloride with a net weight of 48.5 +/- 0.2 g, with a purity of 96% +/- 6% and amount pure substance of 46.5 g +/- 3.1 g.

8. ODOC OIG Agent in Charge Chris Hudson reviewed OSP surveillance footage from September 4, 2025, and observed the denim bag on the back of a forklift operated by SPEARS enter the laundry facility where the bag was taken inside. The denim bag was located in a wall safe in the rear of the laundry facility by ODOC staff. Interviews conducted with an employee and inmates assigned to work in the laundry facility revealed the contraband was delivered in a blue denim bag transported on a forklift. An interview with an ODOC employee revealed SPEARS delivered Coca-Cola products utilizing a forklift, with the denim bag on the rear of the forklift. An inmate retrieved the bag when SPEARS arrived at the laundry facility, placed it into a laundry cart, and began stacking items on top of the bag. The inmate pushed the cart to the back of the facility, out of the employee's view.

9. During the course of the investigation a cellular phone was recovered from an inmate (hereafter "THE INMATE"), who agreed to cooperate with law enforcement, and

voluntarily provided the passcode to unlock the phone. In the cell phone, SPEARS was saved under the contact name "Trucks." A review of the text messages showed:

a. SPEARS provided his CashApp username as "$DavidCSpears"

b. THE INMATE confirmed a $900 payment to SPEARS' CashApp

c. A message on August 1, 2025 between THE INMATE and SPEARS stated THE INMATE need to "make some" with a money bag emoji, and SPEARS responded that he was ready whenever THE INMATE was ready.

d. Several texts reference meetings at Walmart in McAlester, with SPEARS describing his Camaro vehicle to assist identify him to obtain contraband

e. On August 28, 2025, THE INMATE and SPEARS communicated about SPEARS meeting THE INMATE's girlfriend at the usual place to get THE INMATE's issues. THE INMATE used the word "issues" to communicate about contraband. SPEARS texted the 28th was good. SPEARS and THE INMATE continued texting until THE INMATE's girlfriend arrived. SPEARS was off work from August 29, 2025 through September 1, 2025 and the communication stopped. On September 2, 2025, SPEARS texted THE INMATE that he did not go to work that day due to being sick. SPEARS was also off work on September 3, 2025. SPEARS returned to work on September 4, 2025, which is when the communication resumed about the contraband being brought in on that day. SPEARS texted, "I'm here today you ready." THE INMATE responded, "HELL Yeah." At 7:01 a.m., SPEARS responded, "Cool." SPEARS went to the laundry room around 10:59 a.m. and delivered the denim bag to the inmates. At 2:05 p.m.,

SPEARS texted THE INMATE the following: "There is a small package I didn't see, I'll get it to you tomorrow" (referring to Sept. 5, 2025). THE INMATE responded, "Phones?? The Xanax?? I'm missing a couple things unk." They continued the text conversation asking if the items were phones and keisters. SPEARS responded, "Let me check my car trunk, it may have fell out of the bag." At this point, THE INMATE's phone was seized by OSP Correctional Staff.

10. The phone number SPEARS used to communicate with THE INMATE is not the personal phone number known by SPEARS' employer. It is believed by ODOC OIG Agent in Charge Chris Hudson the phone SPEARS used to communicate with THE INMATE is an unattributed throw away phone, which SPEARS used in an effort to conceal his identity and involvement with THE INMATE.

11. THE INMATE told ODOC OIG Agent in Charge Chris Hudson at THE INMATE had received narcotics and contraband from SPEARS for three years. SPEARS was employed at OSP for more than 20 years.

12. ODOC OIG Agent in Charge Chris Hudson knows SPEARS to drive a silver Chevrolet Camaro, bearing Choctaw Nation tribal license plate 03463CH, which was parked in OSP's parking lot on September 5, 2025, and was impounded. The Chevrolet Camaro had a secondary owner of Lola Spears, which is SPEARS' wife.

13. On September 22, 2025, FBI Agents and ODOC OIG Agents searched SPEARS' Chevrolet Camaro pursuant to a search warrant issued in the Eastern District of Oklahoma. Agents located a gray Motorola touchscreen cellular telephone between the driver seat and the console.

14. The Motorola cellular telephone was searched pursuant to a search warrant issued in the Eastern District of Oklahoma. The phone user was identified as SPEARS through photographs and communication found on the phone. Communication messages found on SPEARS' phone are consistent with the messages found on THE INMATES' phone, and I believe that SPEARS used this phone to communicate with THE INMATE about bringing contraband into the prison.

15. In addition to the gray Motorola touchscreen cellular telephone, agents located methamphetamine in the trunk of SPEARS' Chevrolet Camaro.

16. The methamphetamine found in the Chevrolet Camaro, driven by SPEARS on the day he was arrested, was analyzed by the Drug Enforcement Administration. The Chemical Analysis Report identified the substance as methamphetamine hydrochloride with a net weight of 129.4 g +/- 0.9 g, with a purity of 77% +/- 5% and amount pure substance of 99.6 g +/- 7.0 g.

## CONCLUSION

Based on the information set forth above, I believe there is probable cause that SPEARS knowingly and intentionally possessed with the intent to distribute 50 grams or more of methamphetamine (actual), and request the Court issue a Complaint and Arrest Warrant for David Clayton SPEARS.

Jamie M. Cavitt
Special Agent
Federal Bureau of Investigation

Sworn to on the _3rd_ day of April, 2026.

GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE